## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**PAUL CAPOTORTO,**

    **Plaintiff,**

**v.**                                                          **Case #_____**

**LIFE INSURANCE COMPANY**
**OF NORTH AMERICA,**

    **Defendant.**

_____/

## COMPLAINT

The Plaintiff, PAUL CAPOTORTO, sues the Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA (LINA) and states:

### Jurisdiction and Venue

1.    This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2.    This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. § 1132.

3.    LINA is an insurance company headquartered in Indiana, licensed to transact business in Florida, which is or was at all relevant times engaged in business in this District.

4.    CAPOTORTO is a resident of Cape Coral, Florida.

5.     CAPOTORTO is a former employee of Waste Management, Inc. from September 18, 1996 to March 30, 2006, a business headquartered in Houston, Texas, doing business in Lee County, Florida.

6.     Venue is proper in this District.

### Governing Plan

7.     CAPOTORTO is and/or was a participant in each of the plans, funds, programs, or arrangements described herein, or in the alternative, was at all times relevant a participant in each of the plans, funds, programs, or arrangements described herein.

8.     At all relevant times, CAPOTORTO was a participant in an employee benefit plan providing Long Term Disability benefits (hereafter referred to as "the Plan"), sponsored by Waste Management, Inc..

9.     Waste Management, Inc. funded its Plan by purchasing a group policy of insurance (Group # LK-980024) issued by LINA.  A copy is attached hereto Exhibit "A" and is incorporated by reference.

### The Long Term Disability Claim

10.     CAPOTORTO was employed by Waste Management, Inc. from September 18, 1996 to March 30, 2006

11.     CAPOTORTO made a claim for Long Term Disability benefits under the Plan after he was forced to stop working due to a combination of restrictions and limitations resulting from numerous conditions including but not limited to:

    a.  HIV/AIDS,

    b.  chronic diarrhea,

    c.  Kaposi's sarcoma,

    d.  hypertension,

    e.  spondylosis in the lumbar spine,

    f.  arthritis, neuropathy,

    g.  fibromyalgia,

    h.  extreme weakness and fatigue of the extremities,

    i.  chronic back pain, headaches,

    j.  dizziness, deep vein thrombosis,

    k.  chronic fatigue and chronic lower extremity pain.

12.    LINA, the Plan's claim administrator, determined that CAPOTORTO was disabled with him in the terms of the plan and paid him benefits under the Plan from 2006 until 2012.

13.    At one point in time, LINA terminated CAPOTORTO's benefits in September 2012, but reinstated those benefits after CAPOTORTO appealed the benefit termination.

14.    LINA terminated CAPOTORTO's benefits once again in an October 19, 2018 letter which terminated benefits effective November 19, 2018.

15.    In its October 2018 termination letter, LINA claimed CAPOTORTO did not meet the definition of disability stated in the insurance policy which funds the Plan.  That definition states:

*The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*unable to perform the material duties of his or her Regular Occupation;*
*and unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.*

*After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
*unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and unable to earn 60% or more of his or her Indexed Earnings.*

*The Insurance Company will require proof of earnings and continued Disability.*

16.    CAPOTORTO filed a timely appeal on April 17, 2019

17.    CAPOTORTO's various conditions are either unchanged or have progressively worsened since LINA originally approved his claim in 2006.

18.    LINA failed to rely on CAPOTORTO's treating doctors who have not released him back to work in any capacity.

19.    CAPOTORTO underwent a Functional Capacity Evaluation on November 27, 2018 and November 28, 2019 to ascertain his ability to engage in physical activities.

20.    The results of the Functional Capacity Evaluation proved that CAPOTORTO had the following restrictions and limitations:

- Less than sedentary work capacity;
- Occasional lifting ability of 8 pounds from knee to waist, 10 pounds waist to shoulder and 8 pounds waist to overhead;
- Unable to perform two-handed carry or push/pull 30 feet;

- Stand and walk infrequently;
- Unable to squat, kneel, balance, crawl;
- Infrequently stair climb;
- Occasional reach forward with the right and frequently with the left;
- Occasional reach overhead bilaterally;
- Occasionally handle/grasp and fine manipulation bilaterally;
- Performed with a valid and good effort;
- Moderate to high level of pain, did not demonstrate symptom magnification behavior;
- Walks with a cane in his right hand;
- Did not meet the strength requirements for sedentary work;
- Did not meet the bilateral upper extremity use requirements for sedentary work;
- Did not meet the positional (sitting) requirements for sedentary work.

21.     CAPOTORTO underwent a vocational assessment with Ashley Johnson, MS, CRC, CLCP on February 8, 2019.  Ms. Johnson explained that after considering all of the restrictions and limitations provided and all of the vocational relevant evidence, CAPOTORTO is unable to return to his own or any occupation in the competitive work market.

22.     CAPOTORTO is unable to meet the demands or requirements of any occupation due to the restrictions and limitations outlined by his physicians.

23.     CAPOTORTO is not able to earn 80% or more of his Indexed Earnings.

24.     CAPOTORTO has not been released back to work in any capacity.

### Deemed Denial & De Novo Review Due To LINA's Failure to Make a Timely Decision on the Claim Appeal

25.     Upon initiation of a Long Term Disability claim, a claims administrator has 45 days with which to make a determination. 29 C.F.R. §

2560-503.1(i)(3). This period of time "shall begin at the time an appeal is filed . . . without regard to whether all the information necessary to make the benefit determination on review accompanies the filing" 29 C.F.R. § 2560-503.1(i)(4)).

26.     A claims administrator may extend the period for up to 45 days, and in no event shall the extension exceed a period of 45 days.  29 C.F.R. § 2560.503-1(i)(1)(i); 29 C.F.R. § 2560.503-1(i)(3).

27.     CAPOTORTO's letter dated April 17, 2019 specifically stated that "[a]pplicable timelines pursuant to 29 C.F.R. § 2560.503-1 beg[a]n with receipt of [that] letter."

28.     Based upon the date LINA received the appeal, April 17, 2019, the 45th day to either decide CAPOTORTO's claim or request an extension was June 1, 2019. Given the fact that June 1, 2019 was a Saturday, LINA's deadline to render a decision or request an extension was June 3, 2019.

29.     LINA advised CAPOTORTO the 45th day to either decide his claim or request an extension was May 31, 2019.

30.     On May 2, 2019 LINA requested a 45-day extension from May 31, 2019 resulting in LINA's deadline to decide the claim as July 15, 2019.

31.     On June 26, 2019, LINA re-confirmed the 90th day following the appeal was July 15, 2019.

32.     LINA's decision was due on July 15, 2019.

33.     As of the date of filing this Complaint, July 22, 2019, LINA still had not reached a decision on CAPOTORTO's claim in violation of the Regulations.

34.     CAPOTORTO's claim is deemed denied by LINA's failure to make a decision within the regulations outlined by 29 C.F.R. § 2560-503-1.

35.     Under 29 C.F.R. § 2560.503-1(l), when LINA does not follow the regulated deadlines, CAPOTORTO's claim is deemed to have exhausted all administrative remedies.

36.     CAPOTORTO is prejudiced by LINA's failure to make a timely decision.

37.     De novo review applies to this action by virtue of LINA's violation of 29 C.F.R § 2560.503-1.

**Alternatively, De Novo Review Applies Under Texas Law**

38.     The policy which funds the plan was issued in Texas and is governed by Texas law.  See Exhibit "A," page 1.

39.     Texas has banned the delegation of discretion or any such clause that "purports or acts to bind a claimant, or grant deference in subsequent proceedings, adverse claim decisions or policy interpretations by the insurer" in its administrative code. 28 Tex. Admin. Code § 3.1202.

40.     28 Tex. Admin. Code § 3.1202 is a state insurance law which is saved from preemption under ERISA and which applies to this action.

41.     Texas insurance law barred the Plan at issue from delegating discretionary authority to LINA.

42.     Because Waste Management could not have delegated discretion to LINA by operation of law, the de novo standard of review applies to this action.

**Alternatively, De Novo Review Applies Because There Was No Proper Delegation of Discretion to LINA**

43.     The group policy was drafted in its entirety by LINA.

44.     The group policy is a contract of adhesion.

45.     Waste Management, Inc. and LINA use the group insurance policy (Exhibit A) as both the Plan document and policy language.

46.     No other plan documents exist other than the group insurance policy (Exhibit A).

47.     No originating plan document exists which instituted the LINA disability plan.

48.     No originating plan document or other document exists in which Waste Management, Inc. reserved any discretionary authority to itself in relation to the LINA disability plan.

49.     The employees or agents of Waste Management, Inc. and LINA did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from Waste Management, Inc. to LINA before purchasing the group insurance policy to fund its disability plan.

50. At the inception of its disability plan, Waste Management, Inc. did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

51. At the time it purchased the group disability insurance policy from LINA, Waste Management, Inc. did not have any discretionary authority which it could delegate to an insurance company.

52. The group disability insurance policy was drafted entirely by LINA.

53. No document prepared by LINA delegates any discretionary authority to Waste Management, Inc.

54. There is no mention of any delegation of discretion within the four corners of the Long Term Disability insurance policy.

55. Waste Management, Inc. was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because or one or more of the following:

    a) LINA never had the authority to delegate discretion to Almost Family, Inc. following the inception of its disability plan;

    b) Discretionary authority is a material concept that LINA never discussed with Waste Management, Inc;

c)      The group insurance policy is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

d)      If it had power to delegate discretion, LINA did not properly delegate discretionary authority over claims decisions to Waste Management, Inc.

56.     De novo review applies to this action.

## Benefits at Issue

57.     CAPOTORTO is entitled to benefits under the Plan consisting of Long Term Disability since the date of termination, November 19, 2018, through the date of filing this action, as he has met the definition of disability based upon restrictions and limitations related to his impairments.

58.     Benefits under the group disability insurance policy are calculated at a rate of 60% of CAPOTORTO's gross basic monthly earnings.

59.     As of the date of filing this action, LINA owes CAPOTORTO a total of eight monthly benefit payments at the rate of  $4,146.00, an aggregate sum of $33,168.00.

60.     Plaintiff is entitled to benefits herein because:

(a)     The benefits are permitted under the Plan.

(b)     Plaintiff has satisfied all conditions to be eligible to receive the benefits.

(c)    Plaintiff has not waived or otherwise relinquished entitlement to the benefit.

61.    Each monthly benefit payment owed since November 19, 2018 is a liquidated sum and became liquidated on the date the payment was due and payable.  Plaintiff seeks pre-judgment interest on each such payment.

62.    Pursuant to ERISA § 502(g), 29 U.S.C. §1132(g), CAPOTORTO is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA.  Plaintiff has been required to obtain the undersigned attorney to represent him in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

**WHEREFORE**, the Plaintiff, PAUL CAPOTORTO, asks this Court to enter judgment against the Defendant, LIFE INSURANCE COMPANY OF AMERICA, finding that:

(a)    The Plaintiff is entitled to Long Term Disability benefits from through the November 19, 2018 filing of this lawsuit; and

(b)    Awarding benefits in the amount not paid to the Plaintiff from November 19, 2018 to the date of filing this lawsuit - a total of $33,168.00, together with pre-judgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid, and declare entitlement to any additional benefits owed to Plaintiff from the time of filing this Complaint to the time of Judgment in this action; and

(c)    Award reasonable attorney fees and costs incurred in this action; and

(d)    For such other and further relief as this Court deems just and proper, including but not limited to:

1.   a declaration that Plaintiff's same claim for benefits
     continues after the last date of benefits awarded by the
     Court, without need to file a new application for benefits,
     and

2.   remanding Plaintiff's claim to the Plan Administrator for
     further action to address continuing benefits after the final
     date of benefits awarded by this Court, and

3.   ordering Defendant to advise Plaintiff's former employer or
     any other necessary entity that benefits in this action were
     properly paid through the date of this Court's Order
     awarding benefits for purposes of coordinating or
     reinstating any ancillary benefits which should properly be
     paid or for which coverage should be awarded as a result of
     Plaintiff's receipt of disability benefits under the Plan.

DATED this 22nd day of July, 2019.

Respectfully submitted,

TUCKER LAW GROUP, P.A.


    */s/ John V. Tucker*
JOHN V. TUCKER, ESQUIRE
Florida Bar # 899917
Tucker@TuckerLawGroup.com
WILLIAM C. DEMAS, ESQUIRE
Florida Bar # 0421920
Demas@TuckerLawGroup.com
5235 16th Street North
St. Petersburg, Florida 33703
Tel.:   (727) 572-5000
Fax:   (727) 571-1415
Attorneys and Trial Counsel for Plaintiff